UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------
DISABILITY RIGHTS NEW YORK,

                        Plaintiff,

      -against-

NEW YORK STATE OFFICE FOR PEOPLE
WITH DEVELOPMENTAL DISABILITIES, and
KERRI NEIFELD, in her official capacity as
Commissioner of the NEW YORK STATE
OFFICE FOR PEOPLE WITH DEVELOPMENTAL
DISABILITIES,

                        Defendants.
------------------------------------------------------------

MEMORANDUM & ORDER

23-CV-3883 (NGG) (SJB)

NICHOLAS G. GARAUFIS, United States District Judge.

This is a civil rights action brought by Plaintiff Disability Rights New York ("DRNY") against Defendant New York State Office for People with Developmental Disabilities ("OPWDD") and its Commissioner, Kerri Neifeld (collectively, "Defendants"). Currently before the court is Defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Not. of Mot. to Dismiss (Dkt. 19); Mem. in Supp. of Mot. to Dismiss ("Defs.' Mot.") (Dkt. 20).)

For the reasons discussed below, Defendants' motion is GRANTED.

I. BACKGROUND

    A. Factual Background[1]

Disability Advocates, Inc., d/b/a DRNY is an independent nonprofit corporation designated by then-Governor Andrew M.

---

[1] The following facts are taken from the Complaint and, for the purposes of this motion to dismiss, are assumed to be true. *See Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 349 (2d Cir. 2022).

1

Cuomo as New York State's Protection and Advocacy ("P&A") system to protect and advocate for persons with disabilities. (Compl. (Dkt. 1) ¶¶ 17-19.) Pursuant to this designation and as mandated by federal law, DRNY is authorized to, among other things, investigate incidents of abuse and neglect of persons with disabilities if such incidents are reported to the P&A system. (*Id.* ¶¶ 20, 29 (citing 42 U.S.C. § 15043(a)(2)(B)).) Specifically, upon receiving a complaint of abuse or neglect, the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. § 15041 *et seq.*, authorizes the designated P&A system, in this case DRNY, to obtain individual records germane to its investigation of said abuse or neglect. (*Id.* ¶ 32 (citing 42 U.S.C. §§ 15043(a)(2)(I) and 15043(a)(2)(J)(i)).) Under the DD Act, DRNY must have access to records within three business days after it makes a written request. (*Id.* ¶ 33 (citing 42 U.S.C. § 15043(a)(2)(J)(i); 45 C.F.R. § 1326.25(c)(2)).) Should DRNY's access to records be delayed or denied, DRNY must be provided with a written statement of reasons for the delay or denial within one business day of the expiration of the deadline to produce the records. (*Id.* ¶ 34 (citing 45 C.F.R. § 1326.26).) New York State law similarly provides DRNY with broad access to the records of persons with disabilities under certain circumstances, including in furtherance of an investigation into alleged abuse or neglect. (*Id.* ¶¶ 36-43 (citing 2022 N.Y. Sess. Laws Ch. 28 (A. 8710) (McKinney) [hereinafter "New York P&A Records Act"]; N.Y. Exec. Law § 558(b)).)

In August and September of 2022 respectively, DRNY received two complaints related to two individuals with developmental disabilities that alleged these individuals were left in jail for long periods as a result of OPWDD's failure to timely remove them from jail and provide necessary care and treatment. (*Id.* ¶ 44.) New York Criminal Procedure Law mandates that if a local criminal court determines that a defendant in a criminal matter lacks

capacity to undergo trial as a result of an intellectual or developmental disability, the court must issue an order—known as a "730 Order"—remanding that individual into Defendants' custody. C.P.L. § 730.60(1). Upon receipt of a 730 Order, Defendants must remove the individual from jail and provide them with appropriate care and treatment. *Id.* (*See also* Compl. ¶ 6.)

DRNY received complaints that one individual with a developmental disability was in jail for over a year after the local criminal court determined he lacked capacity and issued a 730 Order. (Compl. ¶ 45.) Regarding the second individual, the complaint alleged that this person was in jail 33 days after the local criminal court determined he lacked capacity and issued a 730 Order. (*Id.*) The complaints also alleged that these individuals suffered significant emotional harm and trauma by remaining incarcerated and without care or treatment. (*Id.*) Based on these complaints, as well as others, DRNY initiated an investigation into OPWDD's practices related to "individuals with developmental disabilities who are in jail, determined to lack capacity for trial, and remanded by criminal courts into Defendants' custody pursuant to 730 Orders." (*Id.* ¶¶ 46-47, 50.)

As part of its investigation, DRNY sent[2] Defendants a written request for records pertaining to every individual for whom

---

[2] Plaintiff states this request was sent on April 13, 2023. (*Id.* ¶ 51.) Defendants point to evidence submitted by DRNY in support of its now-withdrawn motion for injunctive relief, which reveals that while the letter was dated April 13, 2023, the transmittal email that attached the letter was not sent until 2:41 P.M. on Friday, April 14, 2023. (*See* Exhibits to Taylor Decl. (Dkt. 7-5) at Bates No. 0001.) *See also Amidax Trading Grp. v. S.W.I.F.T. SCRL,* 671 F.3d 140, 145 (2d Cir. 2011) ("In reviewing a facial attack to the court's jurisdiction, we draw all facts—which we assume to be true *unless contradicted by more specific allegations or documentary evidence*—from the complaint and from the exhibits attached thereto.") (emphasis added).

3

OPWDD received a C.P.L. § 730.40(1) temporary order of observation or C.P.L. § 730.50(1) order of commitment since January 1, 2019. (*Id.* ¶ 51.) Defendants responded three days later, explaining that due to a staffing crisis and the fact that the requested information is "not part of an automated system and will require a manual case-by-case lookup and reconciliation of data across multiple platforms," there will be a delay in providing the requested records, but that the OPWDD will respond no later than July 14, 2023. (*Id.* ¶ 53.) On April 27, 2023, DRNY replied, objecting to the delay, and requesting a meet and confer to discuss resolution. (*Id.* ¶ 54.) Rather than meet, OPWDD denied the request, noting that DRNY failed to provide the requisite information for the request as required by law. (*Id.* ¶ 55.)[3] DRNY responded to the Defendants' denial, explaining that its investigation was "prompted by multiple complaints of neglect" and asked to "[t]herefore, please produce the requested records by Friday May 5 to avoid enforcement of our access rights through legal action." (*Id.* ¶ 56.) OPWDD again denied the request, noting that DRNY has yet to identify an individual who has been subject to neglect, provide any evidence of a complaint, nor assert any basis for an investigation. (*Id.* ¶ 57; Exhibits to Taylor Decl. (Dkt. 7-5) at Bates No. 0014.) DRNY objected again, noting that absent the requested documents, it will pursue litigation. (Compl. ¶ 58.)

Following no response or document production, DRNY initiated the instant lawsuit by filing its complaint on May 24, 2023. (*See generally* Compl.) DRNY brings parallel federal and state law claims, seeking a declaratory judgment finding that OPWDD violated the law by failing to produce the requested records and an

---

[3] Citing to 45 C.F.R. §1326.25 (a)(2)(iii), OPWDD explained that DRNY failed to specify in its request whether DRNY had received complaints concerning the population at issue, or that it had probable cause to believe that any abuse or neglect had occurred in connection with that population. (*See* Exhibits to Taylor Decl. at Bates No. 0008.)

injunction ordering the Defendants to provide all requested records. (*See id.* ¶¶ 61-78 and Part VI (Requests for Relief).)

### B. Procedural History

On May 25, 2023, the day after filing the Complaint, DRNY moved for a preliminary injunction to compel production of the sought-after documents. (*See generally* Mot. for Prelim. Inj. (Dkt. 7).) On June 16, 2023, the parties submitted a joint stipulation withdrawing DRNY's motion for a preliminary injunction because OPWDD provided the requested records. (*See* June 16, 2023 Stipulation (Dkt. 13).) The same day, OPWDD requested a pre-motion conference to discuss its anticipated motion to dismiss. (PMC Ltr. (Dkt. 14).) OPWDD argued that its production of documents mooted DRNY's claims for declaratory and injunctive relief, and that the Complaint should therefore be dismissed. (*Id.* at 2-3.)

During the pre-motion conference on August 4, 2023, the parties agreed on record that OPWDD had produced all requested materials. (*See* PMC Tr. (Dkt. 18) at 2:20-23 (Plaintiff noting that "on June 13th and 14th, the defendants did provide copies of the records that were requested in our April letter, and subsequently we requested some additional clarifications, and those were recently provided as well.").) When this court asked why the matter was still being litigated, DRNY responded that because the Defendants still violated the law in delaying production of the requested documents, it was important that this court "clarif[y]" the law as it applies to DRNY to ensure its compliance under the relevant statutes. (*See id.* at 4:22-25.) The court granted OPWDD leave to file the motion (*see* Min. Entry dated August 4, 2023), which was deemed fully briefed following submission of Plaintiff's requested sur-reply. (*See* Defs.' Mot; Pl.'s Opp. (Dkt. 21); Defs.' Reply (Dkt. 23); Pl.'s Sur-Reply (Dkt. 26).)

## II. LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).[4] "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* In applying Rule 12(b)(1), "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Razi Sch. v. Cissna*, 519 F. Supp. 3d 144, 148 (E.D.N.Y.), *aff'd sub nom. Nouritajer v. Jaddou*, 18 F.4th 85 (2d Cir. 2021). Thus, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

## III. DISCUSSION

Defendants seek dismissal of DRNY's complaint on three primary grounds: (1) that Plaintiff lacks standing for any prospective declaratory or injunctive relief; (2) that the case is now moot following Defendants' production of the requested documents; and (3) Plaintiff's state law claim is barred by the Eleventh Amendment. (Defs.' Mot. at 1.) The court addresses the second ground for dismissal, mootness, to find that the Complaint must be dismissed.

---

[4] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

### A. Legal Principles

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Dark Storm Indus. LLC v. Hochul*, No. 20-CV-2725, 2021 WL 4538640, at *1 (2d Cir. Oct. 5, 2021) (Summary Order); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "A moot action therefore must be dismissed, even if the case was live at the outset but later events rendered it moot." *New York City Employees' Ret. Sys. v. Dole Food Co.*, 969 F.2d 1430, 1433 (2d Cir. 1992). There are exceptions to this general rule, including the doctrines of voluntary cessation and capable of repetition but evading review, which are of relevance here.

Generally, "voluntary cessation of a challenged practice rarely moots a federal case." *Rivers v. Doar*, 638 F. Supp. 2d 333, 337 (E.D.N.Y. 2009). Thus, to overcome the voluntary cessation exception, a defendant must show that "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016). A defendant may satisfy its burden where it shows that "the possibility of recurrence is merely speculative." *Dark Storm Indus. LLC*, 2021 WL 4538640, at *1; *see also Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 88 (2d Cir. 2005).

The more extraordinary exception to the mootness doctrine applies when the alleged violations are "capable of repetition, yet evading review." *Kane v. Blueprint Test Preparation LLC*, No. 19-CV-3024 (SJF) (AKT), 2020 WL 7000731, at *7 (E.D.N.Y. Aug. 24, 2020), *report and recommendation adopted*, No. 19-CV-3024 (SJF) (AKT), 2020 WL 6281391 (E.D.N.Y. Oct. 27, 2020). "This exception applies when (1) the challenged action is too short in duration to be fully litigated prior to its cessation or expiration,

and (2) there is a reasonable expectation or a demonstrated probability that the controversy will recur." *Id.* (citing *United States v. Quattrone*, 402 F.3d 304, 309 (2d Cir. 2005).) And similar to the doctrine of voluntary cessation, the burden is on the defense to overcome the exception. *Id.*

### B. Application

This case is now moot. Defendants have provided the requested documents to Plaintiff. (*See* PMC Tr. at 2:20-23 (Plaintiff noting that "on June 13th and 14th, the defendants did provide copies of the records that were requested in our April letter, and subsequently we requested some additional clarifications, and those were recently provided as well.").) Plaintiff now argues that, despite its prior stipulation that production was complete, it has "identified numerous deficiencies in the production." (Pl.'s Opp. at 6.) Yet, nowhere in the pleadings does Plaintiff identify the purported deficiencies. In contrast, Defendants have provided additional evidence that contradicts Plaintiff's assertion that the latest document request (on September 8, 2023) was incomplete. (*Compare* Pl.'s Opp. at 6 (noting latest document production was on September 8, 2023 but that it was incomplete), *with* Ex. E to Mirro Aff. (Dkt. 22) at ECF 14-15 (Defendant OPWDD responding on the third business day—September 13, 2023—with the requested information).) *See also Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). Plaintiff does not contest this argument in its Sur-reply, instead, insisting that Defendants continue to violate law because they did not produce documents within the statutory timeframe. (*See* Pl.'s Sur-Reply at 3.) This line of argument, without any evidence of additional instances where Defendants fail to provide documents, cannot serve as a basis to maintain this action where the relief Plaintiff seeks has already been provided. Accordingly, the

court cannot find that the issues Plaintiff presented in its Complaint remain "live." *Dark Storm Indus. LLC*, 2021 WL 4538640, at *1.

Indeed, the Complaint raises concerns regarding a single records request initially raised in April 2023. (*See* Compl. ¶¶ 51-60.) And, as stipulated by the parties in this action, OPWDD produced all records related to that request on June 13 and June 14, 2023. (PMC Tr. at 2:20-23.) Thus, Plaintiff's requests for (1) a permanent injunction ordering Defendants to produce all requested documents and (2) a declaratory judgment stating that Defendants violated the law are moot as "there is no longer any effectual relief whatever that this Court can grant DRNY." *Disability Rts. New York v. New York State Dep't of Corr. & Cmty. Supervision*, No. 21-2040-CV, 2022 WL 10218514, at *2 (2d Cir. Oct. 18, 2022).[5]

Additionally, the court disagrees that an actual controversy continues to exist even if all documents are produced. (*See* Pl.'s Opp. at 6.) Plaintiff primarily relies upon *Disability Rts. New York v. New York State Dep't of Corr. & Cmty. Supervision* to support a finding against mootness. No. 20-CV-1487 (GTS) (CFH), 2024

---

[5] Following the parties' fully briefed motions, the parties notified the court of supplemental authority, namely the Northern District of New York's decision granting the defendants' motion for summary judgment and finding DRNY's claims moot in *Disability Rts. New York v. New York State Dep't of Corr. & Cmty. Supervision*, No. 20-CV-1487 (GTS) (CFH), 2024 WL 184248, at *2 (N.D.N.Y. Jan. 16, 2024). Plaintiff attempts to shoehorn additional factual allegations into its letter regarding this decision to support its claim that Defendants in this case continue to violate federal and state law. (*See* Pl.'s Authority Ltr. (Dkt. 27) at 2 (discussing a separate individual records request in November 2023).) The court will not consider these conclusory allegations couched in a letter regarding legal authority as they do not provide Defendants with an opportunity to meaningfully respond. (*See* Defs.' Response (Dkt. 28) at 3 (noting there is "insufficient information provided [in Plaintiff's letter] to verify the accuracy of any of that information.").)

WL 184248 (N.D.N.Y. Jan. 16, 2024) [hereinafter *"DRNY II"*].[6] However, the court in that case recently rendered a decision expressly granting the defendants' cross-motion for summary judgment "for each of the reasons stated by Defendants in their memorandum of law" and on Eleventh Amendment immunity grounds. *Id.* at *2. Included in the defendants' reasons for why the district court should grant their motion was the argument that the case was moot given the defendants provided all requested documents. *Id.* Of course, decisions from other district courts on similar issues are not binding on this court but are undoubtedly instructive given the recent decisions related to DRNY's access and authority to obtain records.

Nevertheless, Plaintiff argues that the exceptions of voluntary cessation and capable of repetition, yet evading review apply. (*See* Pl.'s Opp. at 7, 10.) The court disagrees.

Neither exception can apply where Defendants establish that there is no "reasonable expectation that the alleged violation will recur for purposes of the voluntary cessation exception nor a reasonable expectation that [Plaintiff] will be subject to the same action again, for purposes of the capable-of-repetition exception." *Rivera v. City of New York*, No. 22-CV-616 (PKC) (PK), 2023 WL 6385771, at *9 (E.D.N.Y. Sept. 30, 2023).

With respect to voluntary cessation, Defendants have met their burden to show that the exception does not apply here. In arguing for the exception, DRNY only points to the purported deficiencies concerning the April 2023 record request (*see* Pl.'s Sur-Reply at 3), but otherwise fails to respond to Defendants' argument that the Complaint contains no allegations of any future

---

[6] While related, this case is not the same case cited *infra*. *Cf. Disability Rts. New York v. New York State Dep't of Corr. & Cmty. Supervision*, No. 18-CV-0980 (GTS) (CFH), 2019 WL 4643814 (N.D.N.Y. Sept. 24, 2019), *partial reconsideration granted on other grounds*, No. 18-CV-0980 (GTS) (CFH), 2020 WL 6484049 (N.D.N.Y. Nov. 4, 2020) [hereinafter *"DRNY I"*].

injury. (Defs.' Mot. at 10.) Indeed, Defendants emphasize that when this court asked if the denial and/or delay of records by OPWDD is a recurring event, Plaintiff could not identify a specific instance of similar delay. (*Id.*; *see also* PMC Tr. at 5:1-17 (Plaintiff explaining that "[w]hen it comes to the defendant in particular, this is the first time, I believe, in a few years . . . that there's access on this point, although we've had previous issues with non-P&A requests and systemic records request from them"); *id.* at 6:11-17 (Defendant confirming that "OPWDD has never been sued, to our knowledge, by DRNY concerning the timeliness of its production").) Despite opportunities to address this argument in its Opposition and Sur-reply, Plaintiff ignores the claim entirely.

As noted by the Northern District of New York, "[i]n situations where courts have granted injunctive relief to P&A systems, there has been clear evidence of repeated denials of any access to records." *Disability Rts. New York v. New York State Dep't of Corr. & Cmty. Supervision (DRNY I)*, No. 18-CV-0980 (GTS) (CFH), 2019 WL 4643814, at *22 (N.D.N.Y. Sept. 24, 2019), *partial reconsideration granted on other grounds*, No. 18-CV-0980 (GTS) (CFH), 2020 WL 6484049 (N.D.N.Y. Nov. 4, 2020) (collecting cases). Plaintiff requested records at a time when Defendants were facing a "severe and unprecedented staffing crisis which has affected OPWDD settings across the state at every level of operations." (Exhibits to Taylor Decl. at Bates No. 0005.) Thus, Plaintiff would have to show that in a similar circumstance in the impending future, Defendants would likely fail to supply requested documents within the appropriate time period.[7] As Plaintiff fails to contemplate such a situation, nor present evidence of any prior violations, the court finds no basis to invoke the voluntary cessation exception.

---

[7] Because the court finds dismissal of this action is appropriate on jurisdictional grounds, it does not reach the merits to determine whether Plaintiff's Complaint, as alleged, pleads a violation of the relevant P&A laws.

While true that "the voluntary cessation of allegedly illegal conduct will not moot a case when done for the deliberate purpose of evading a possible adverse decision by the court," there is no evidence, beyond Plaintiff's own assertion, that Defendants provided the requested documents for the deliberate purpose of evading an unfavorable decision following commencement of this action. *Manbeck v. Colvin*, No. 15-CV-2132 (VB), 2016 WL 29631, at *5 (S.D.N.Y. Jan. 4, 2016). (*See also* Pl.'s Opp. at 9.) To the contrary, evidence submitted to the court shows that following the request, but before the commencement of this lawsuit, Defendants contemplated a delay and informed DRNY that it would respond by July 14, 2023. (*See* Exhibits to Taylor Decl. at Bates No. 0005.) Defendants provided said documents a month earlier, on June 13 and 14, 2023. (*See* PMC Tr. at 2:20-23.) Further, Defendants do not continue to violate the law regarding a single records request where DRNY already has the documents at issue.

Likewise, the court declines to find Defendants' conduct capable of repetition yet evading review where, as here, Plaintiff only "demonstrates the possibility of repetition, rather than its probability." *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 223 (E.D.N.Y. 2021). Notably, Defendants have stated on the record to this court that "OPWDD recognizes and acknowledges the P&A statute and has every intention to comply with it going forward." (PMC Tr. at 6:9-10.) *See also DRNY II*, 2024 WL 184248, at *3. Rather than point to any indication that these alleged violations are repeated and frequent, Plaintiff only speculates that it will be subjected to Defendants' delay in record requests again in the future, noting that it "will be making additional requests for information to Defendants." (Pl.'s Opp. at 11.) This is not enough to show reasonable expectation of repetition. While true the time frame for receiving documents is extremely limited, Defendants have submitted that "OPWDD has received and responded to countless requests from New York's P&A System in the several

12

decades since the P&A statutes became law." (Defs.' Mot. at 10.) Accordingly, the court declines to hold that this is an "exceptional situation" wherein the issues are capable of repetition, yet evading review. *Lillbask ex rel. Mauclaire*, 397 F.3d at 85.

As no exceptions to the mootness doctrine apply, this court has no authority to issue injunctive or declaratory relief. The court therefore finds that Plaintiff's claims are now MOOT and DRNY's Complaint must be DISMISSED.[8]

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and Plaintiff's claims are DISMISSED. The Clerk of Court is respectfully DIRECTED to close this case.

SO ORDERED.

Dated:   Brooklyn, New York
         June 7, 2024

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

---

[8] Because the court finds this action is dismissed on mootness grounds, it declines to consider standing or whether the Eleventh Amendment bars the state law claim. *See Gee v. Doe*, No. 20-CV-7503 (ALC), 2022 WL 125342, at *3 (S.D.N.Y. Jan. 13, 2022).